Lessee of JOHN WHITEHILL, JEAN BOYD, WILLIAM BOYD and MARGARET his wife *against* JOHN LOUSEY and ROBERT WHITEHILL.

Where it appears by positive proof, that a deposition has not been taken according to the notice, it shall be overruled.

Underhand agreements contrary to agreements on marriage, are void; yet the court will not reject the evidence of such subsequent agreements; but declare their operation.

An agreement will not be decreed against a bona fide purchaser, without notice.

EJECTMENT for 130 acres of arable land, 15 acres of meadow, and 120 acres of woodland, in Salisbury township.

It was admitted, that James Whitehill, senior, was seized of the lands in question. The lessors of the plaintiff claimed the lands, under a gift alleged to be made by him to their father James Whitehill, junior, previous to his marriage with Abigail Miller, their mother, and in contemplation of the said marriage, and a possession thereof delivered accordingly, about 1751. The defendant, Robert Whitehill, rested his defence on a conveyance from James Whitehill, senior, his father, in consideration of natural love and affection, and of 1*s.* sterling, dated 10th March 1761 and possession since that period.

James Whitehill, sen. by his will, dated 31st January 1766, devised to his grand son John Whitehill 50*l.*, and to his grand daughters Jean and Margaret 25*l.* each, to their mother Abigail Culbertson 5*s.* sterling, and to his son Robert Whitehill, one of the defendants, 5*l.* sterling.

On the part of the plaintiff, the deposition of Elizabeth Wilson, purporting to have been taken in Philadelphia on the 1st May 1794, in pursuance of a rule of court, was offered in evidence, but was excepted to by the defendants.

It appeared that the written notice had been served on the defendants, that the deposition would be taken at the house of John Miller, in       street, in Philadelphia, on the 1st May 1794, between the hours of 12 and 4 o'clock, in the afternoon.

Roberts Whitehill, junior, son of the defendant, swore that he was directed by his father, to attend the taking of this deposition on the

1st May 1794, and went to Miller's house on that day, having first had his watch regulated by a time-piece. After some time he was told, that the deposition could not be taken at the time appointed, on account of the absence of Mr. Kittera, one of the plaintiff's counsel, and who was said to have gone to Lancaster. He was afterwards informed by William Boyd, one of the lessors of the plaintiff, that Mr. Kittera had returned, and he would endeavor to procure his attendance ; if he was successful, he would give him further notice, which the witness did not receive from him.   Within three days afterwards Mr. Kittera informed him, the deposition had been taken, and told him, he should have the liberty of cross examining the witness if he though fit, to which he returned no answer.   He was very confident, that the deposition could not possibly have been taken within the hours appointed, having had a written memorandum for his conduct.

On the contrary Mr. Kittera swore, that he took the deposition at the house of Miller, came there within the time appointed by the notice, and his mind was well impressed that it was properly taken ; but he also said, that he did not remember any thing particular, respecting the time of taking it, except from the deposition itself.

John Whitehill and William Boyd, two of the lessors of the plaintiff, gave testimony of certain facts which rendered it probable that Robert Whitehill, junior, might have mistaken the time of taking this deposition, and that he had blended the incidents of another transaction, which had happened in taking the deposition of Margaret Miller, in his relation of the circumstances deposed.

Yeates, J. declined giving any opinion, having formerly been of counsel in the cause.

Smith, J. expressed his regret that he was compelled to give an opinion unassisted by another judge.   A considerable perplexity arises from the apparent impossibility of reconciling the testimony before the court.

The exception is said by the plaintiff's counsel to be captious, as the defendants' agent admits that he was offered an opportunity of cross examination.   But in a large and general sense the objection is substantial.   If it be allowable to deviate from the rule, can the point be ascertained where we are to stop, and go no further?   Will not the benefits of a cross examination be hazarded by any relation?   It results then to this, that the rule should be strictly adhered to.   Here the defendant's son swears positively from his presence on the spot, that the deposition could not have been taken within the noticed hours.   Mr. Kit

tera's mind is only impressed with the propriety and regularity of taking it. He does not speak with confidence, but grounds his recollection on the face of the deposition. I could have wished there had been more candor and liberality shown by Robert Whitehill, junior, when he was told he might examine the witness. Yet upon the whole, I incline to overrule the deposition, though with hesitation. If I am wrong, the parties have their remedy.

The plaintiff having closed his testimony, and the defendants having opened their defence, offered in evidence the deposition of James Thompson, showing that after the death of James Whitehill, junior, on the lands in question, his father convened together a number of the friends of the widow, and then declared, that his agreement with his son respecting the lands in question, was in consideration of his paying 341*l*., the residue of the money due on the purchase of the premises.

This was excepted to, on the ground that no man shall be permitted to create evidence for himself. Dall. 18.

Per Smith, J. Two rules of law apply on the present question. 1st, The courts have admitted almost all species of evidence, pertinent to the issue, since the case of Rex *v.* Bray. (Annal. 358) 2d, Agreements on marriage are very different from common contracts, and all underhand agreements derogatory therefrom, are in fraud of the marriage and void. If the jury are satisfied from the evidence, that there was an agreement on the marriage, that young James should have these lands absolutely, and the contract now attempted to be proved is contrary to the spirit thereof, it is null and of no effect. But the deposition must go to the jury to enable the court to judge of it, and I shall then declare my sentiments.

The defendant's counsel in their address to the jury, made a point before the court, whether, after Robert Whitehill had held uninterrupted possession of the premises under a legal title, for twenty four years at least, before the bringing of any ejectment, he should not be considered as a purchaser without notice, and his estate be exempted from all trusts whatever. They cited 2 Comy. Dig. 669. 2 Equ. Ca. Ab. 576. 2 Pow. on Cont. 260. 5 Vin. Ab. 533, pl. 38.

Even against James the father, equity would not decree a specific performance on a dormant agreement. But the case of Robert his son, was much stronger; for though equally entitled to a provision from his father as his eldest brother, he, would otherwise be

totally disinherited, except as to the mere pittance of 5*l*. sterling. And chancery will respect the hardships arising on a decree. 3 Atky. 186. Where the equity is equal, the law will take place. 1 Fonbla. 311, 312. The length of time, under all circumstances, is an insuperable bar to the plaintiff's recovery.

For the plaintiff were cited on this point, Cas. Temp. Finch. 449. 1 Vern. 201, 242. 5 Vin. Ab. 519. pl. 17, 530. pl. 3, 4, 8. 1 Pow. on Contra. 300.

Smith, J. gave it in charge to the jury, that the title of the plaintiff depended on the judgment they should form on the whole of the evidence on these points : whether James Whitehill, sen. promised to give the lands to his son James by way of marriage portion, and as an inducement to the marriage ? Whether the estate was to be absolute, and in fee simple on the marriage ? And whether the father put his son in possession in pursuance of the agreement ? If the jury were fully satisfied in the affirmative on these points, and also that Robert Whitehill knew of the marriage agreement before he accepted his conveyance, the plaintiff was entitled to recover.

It was clear, that the father could not attach a subsequent condition to the estate of his son James promised him on his marriage, nor would a private agreement, even if made by his son, contrary to the nature of the first agreement, be good and binding in law.

He inclined to think, that an agreement similar to the present, would not be decreed in equity against the defendant Robert Whitehill, unless there had been fraud and collusion between his father and himself, or that he had notice of the marriage agreement ; but he would not declare, that an ejectment would not lie in any case in Pennsylvania on an agreement, the specific execution whereof would not be decreed in England. Nevertheless he would say, that after such a lapse of time as had taken place, the law required strong and unequivocal proof of the marriage contract. Such length of time operates against the effect of the testimony, but is no bar under all the circumstances, where the evidence is decisively clear and satisfactory to the minds of the jurors.

The consideration of one shilling is tantamount in effect to the largest sum, to render Robert Whitehill, a *bona fide* purchaser. No direct proof has been given of his being acquainted with the marriage agreement, yet strong circumstances have appeared indicative of such knowledge ; these must be maturely and dispassionately weighed by the jury, and a judgment formed on the whole mass of evidence on this point.

Whether the lands in question promised to young James, were more than a proportionable part of the father's estate to one child, is foreign to the present inquiry. Marriage agreements in particular should have the utmost imaginable good faith accompanying them.

Verdict for the plaintiff.

Messrs. Kittera, Hopkins and J. B. M'Kean, *pro quer.*
Messrs. Ingersoll and C. Smith, *pro def.*